IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs August 7, 2012

**ANTONIO BOBO v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**No. 10-03528     Carolyn Wade Blackett, Judge**

**No. W2011-02512-CCA-R3-PC  - Filed December 5, 2012**

Petitioner, Antonio Bobo, entered a guilty plea to assault and received probation on the sentence of eleven months and twenty-nine days.  He filed a petition for post-conviction relief claiming that trial counsel was ineffective for allowing him to enter a guilty plea that was not knowing and voluntary.  He now appeals the denial of post-conviction relief. Following our review of the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which THOMAS T. WOODALL and NORMA MCGEE OGLE, JJ., joined.

Jeff Woods, Memphis, Tennessee, for the appellant, Antonio Bobo.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Amy P. Weirich, District Attorney General; and Lora Fowler, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

I.  Facts

On October 15, 2010, petitioner entered a guilty plea to the offense of assault.  The plea agreement provided for a suspended sentence of eleven months and twenty-nine days. The State's offer of proof established that petitioner approached the victim in a parking lot,

the victim extended his hand to shake hands with appellant, and appellant instead slapped the victim. An altercation between them ensued.

Petitioner filed a timely petition for post-conviction relief on May 25, 2011. The post-conviction court held a hearing on September 16, 2011. Petitioner called trial counsel as his first witness. Trial counsel testified that he appeared in the trial court for petitioner's two assault charges on behalf of the retained attorney because the retained attorney, another member of his firm, could not be present for the October 15, 2010 court date. Trial counsel entered an order substituting his firm for prior counsel, at which time the State handed him a motion for bond increase based on a felony warrant for petitioner in another matter that was pending in general sessions court.[1] The felony warrant involved an act of vandalism allegedly committed by petitioner against the same victim as the assault charges. Petitioner's bond was then revoked, and a bond hearing was scheduled for two weeks later.[2]

The State offered petitioner a "package deal" disposing of the pending cases in criminal court and general sessions court. Trial counsel relayed the offer to petitioner. Trial counsel advised petitioner that he could plead guilty and receive misdemeanor probation or "be taken in on the bond increase and have a bond hearing two weeks later." Trial counsel stated that petitioner was upset about his choices and adamant "that he could not go to jail that day," repeatedly saying, "I can't go to jail, I can't go to jail." Trial counsel acknowledged that he could have asked the court to set the case for trial if petitioner so desired and returned two weeks later for the bond hearing. Petitioner ultimately decided to enter a guilty plea, begin probation, and plead guilty to the charge pending in general sessions court a few weeks later. After pleading guilty to one assault charge,[3] petitioner was released on his own recognizance for the felony vandalism case in general sessions court.

Trial counsel recalled that he did not think petitioner was happy with either option presented to him because they were difficult choices but stated that "if [trial counsel] felt that [the plea] wasn't voluntary[,] [petitioner] wouldn't have entered it." When asked if

---

[1] The felony charge was apparently pending in general sessions court awaiting a preliminary hearing.

[2] By analogy, we note that "[a]ny person arrested--except upon a capias pursuant to an indictment or presentment--shall be taken without unnecessary delay before the nearest appropriate magistrate . . . " pursuant to Rule 5(a) of the Tennessee Rules of Criminal Procedure. Our supreme court has interpreted "unnecessary delay" as 72 hours after arrest. *State v. Carter*, 16 S.W.3d 762, 768 (Tenn. 2000) (citation omitted).

[3] The State dismissed the remaining assault charge.

petitioner was under duress, trial counsel replied, "It's hard to answer. I mean, as much duress as anybody is up here in Criminal Court."

Trial counsel stated that he was present when Judge Robert Carter reviewed petitioner's rights with him and recalled a lengthy exchange between Judge Carter and petitioner. However, he never heard petitioner tell Judge Carter, "I don't want to do this."

Another attorney from trial counsel's law firm testified that petitioner had retained a senior member of the firm to represent him on the assault charges scheduled for trial on October 15, 2010. However, the senior attorney could not be present on the day of trial. When the other attorney arrived in court, trial counsel had already begun outlining petitioner's choices for him. He remembered petitioner's being upset and unhappy about his options and perhaps "shed[ding] a couple of tears." From this attorney's observation, petitioner's primary concern was his employment. The other attorney did not recall petitioner's advising him that he wanted to proceed to trial. He testified that if petitioner had wanted a trial, "he would have gone into custody. And I know he didn't want that to happen." The other attorney stated that he believed petitioner understood that he could either be incarcerated, await a bond hearing, and proceed to trial or that he could enter guilty a plea, be released on his own recognizance, and have misdemeanor convictions on his record. The attorney thought that petitioner weighed the facts and circumstances to make a rational decision to enter a guilty plea. The other attorney testified that he stood in for petitioner's guilty plea and recalled petitioner's struggling with the decision. He also recalled the discussion between petitioner and Judge Carter that resulted in Judge Carter's initial hesitation to accept the plea.

The other attorney stated that from his discussions with petitioner, he thought petitioner was rational and reasonable in making his decision. He recalled that petitioner was appropriately emotional about the situation but not hysterical. This attorney explained that as Judge Carter advised petitioner of his rights, petitioner agreed that he wanted to enter a guilty plea.

Petitioner testified that the ineffective assistance of trial counsel caused him to enter a guilty plea that was not freely and voluntarily made. He initially hired an attorney who learned from the prosecutor that the State would add a charge of vandalism to his case if he did not enter a guilty plea. Petitioner advised his first attorney that he would not accept the plea agreement and then retained a "known trial attorney" because he "adamantly wanted to go to trial." When petitioner appeared in court on October 15, 2010, he informed the court his attorney was out of town and asked for another court date. He then learned from the judge that the State had added a vandalism charge, and the court had revoked his bond. The trial court set the bond hearing for two weeks later and ordered that petitioner be taken into

custody pending the bond hearing. He testified, "And at that time, I literally, almost had a nervous breakdown." Petitioner stated that because he was so upset, a deputy placed a radio call in an attempt to summon an attorney from the same firm to come to the courtroom. Petitioner then expounded upon his job, his family obligations, his retained attorney being absent, the stress and pressure he felt, the feeling of being coerced and "railroaded," and his being very emotional in court the day he entered his plea.

Petitioner described his life as a "living hell" since entering the guilty plea. He explained that he was "laid off" from his job as a security officer with the Memphis City Schools until the issue was resolved. Petitioner admitted that he wanted to have the guilty plea removed from his record to keep his job but denied his job was the reason, saying, "I just simply want justice." When asked if he remembered responding, "Yes, sir," to Judge Carter's advising him of his right to a jury trial, he answered, "I remember the Judge saying he was uncomfortable with this." The State questioned petitioner about excerpts from the plea hearing transcript and petitioner's counsel examined the transcript, after which they determined that the judge did not state that he was "uncomfortable" with the guilty plea and petitioner had answered either, "Yes, sir, this is what I want to do, or this is what I choose to do."

Petitioner explained that on the day of his guilty plea, he "was not thinking clearly," his retained attorney "was not there to explain anything to [him]," and "[he] was not in [his] right mind."

Following the evidentiary hearing, the post-conviction court denied relief. This appeal follows.

## II. Analysis

### A. Standard of Review

To obtain relief in a post-conviction proceeding, a petitioner must demonstrate that his or her "conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103 (2006). A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f) (2006); *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010) (citing *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009)). "'Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Lane*, 316 S.W.3d at 562 (quoting *Grindstaff*, 297 S.W.3d at 216).

-4-

Appellate courts do not reassess the trial court's determination of the credibility of witnesses. *Dellinger v. State*, 279 S.W.3d 282, 292 (Tenn. 2009) (citing *R.D.S. v. State*, 245 S.W.3d 356, 362 (Tenn. 2008)). Questions regarding the credibility of witnesses are matters entrusted to the trial judge as the trier of fact. *Dellinger*, 279 S.W.3d at 292 (citing *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). The post-conviction court's findings of fact carry the weight of a jury verdict and are conclusive on appeal unless the preponderance of the evidence is otherwise. *Rigger v. State*, 341 S.W.3d 299, 307 (Tenn. Crim. App. 2010) (citing *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997)). However, conclusions of law receive no presumption of correctness on appeal. *Rigger*, 341 S.W.3d at 307 (citing *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001)). As a mixed question of law and fact, this court's review of petitioner's ineffective assistance of counsel claims is de novo with no presumption of correctness. *Dellinger*, 279 S.W.3d at 294 (citing *Finch v. State*, 226 S.W.3d 307, 315 (Tenn. 2007)).

The Sixth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, and article I, section 9 of the Tennessee Constitution require that a criminal defendant receive effective assistance of counsel. *Cauthern v. State*, 145 S.W.3d 571, 598 (Tenn. 2004) (citing *Baxter v. Rose*, 523 S.W.2d 930 (Tenn. 1975)). The constitutional right to counsel attaches when adversarial judicial proceedings are initiated against the defendant. *State v. Mitchell*, 593 S.W.2d 280, 286 (Tenn. 1980). "Initiation" is construed as issuance of an arrest warrant, the time of the preliminary hearing in cases where an arrest warrant is not first issued, or by indictment or presentment issued by a grand jury. *Id.* at 286.

To prevail on his claim of ineffective assistance of counsel, petitioner must demonstrate both that his lawyer's performance was deficient and that the deficiency prejudiced the defense. *Finch*, 226 S.W.3d at 315; *Vaughn v. State*, 202 S.W.3d 106, 116 (Tenn. 2006) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Baxter*, 523 S.W.2d at 936). To prove that counsel's performance was deficient, petitioner must establish that his attorney's conduct fell below an objective standard of "'reasonableness under prevailing professional norms.'" *Finch*, 226 S.W.3d at 315 (quoting *Strickland*, 466 U.S. at 688). As our supreme court has previously held:

> '[T]he assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance. It is a violation of this standard for defense counsel to deprive a criminal defendant of a substantial defense by his own ineffectiveness or incompetence . . . Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations.'

*Baxter*, 523 S.W.2d at 934-35 (quoting *Beasley v. United States*, 491 F.2d 687, 696 (6th Cir. 1974)). On appellate review of trial counsel's performance, this court "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." *Howell v. State*, 185 S.W.3d 319, 326 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 689); *see Finch*, 226 S.W.3d at 316.

To establish that petitioner suffered prejudice as a result of counsel's deficient performance, petitioner "'must establish a reasonable probability that but for counsel's errors the result of the proceeding would have been different.'" *Finch*, 226 S.W.3d at 316 (quoting *Vaughn*, 202 S.W.3d at 116). "A 'reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Vaughn*, 202 S.W.3d at 116 (quoting *Strickland*, 466 U.S. at 694); *see Finch*, 226 S.W.3d at 316. As such, petitioner must establish that his attorney's deficient performance was of such magnitude that he was deprived of a fair trial and the reliability of the outcome was called into question. *Vaughn*, 202 S.W.3d at 116 (citing *Strickland*, 466 U.S. at 694; *State v. Burns*, 6 S.W.3d 453, 463 (Tenn. 1999)).

Petitioner must establish both deficient performance and prejudice therefrom to be entitled to post-conviction relief. *Vaughn*, 202 S.W.3d at 116*; Howell*, 185 S.W.3d at 326. It follows that if this court holds that either prong is not met, we are not compelled to consider the other prong. *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004).

## B. Petitioner's Claim

Petitioner claims that trial counsel rendered ineffective assistance of counsel by allowing him to enter a guilty plea that was not knowingly, intelligently, and voluntarily made.

A guilty plea must be entered knowingly, voluntarily, and intelligently. *Lane*, 316 S.W.3d at 562; *see North Carolina v. Alford*, 400 U.S. 25, 31 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242-44 (1969). If a plea is not knowingly, voluntarily, and intelligently entered, the guilty plea is void because appellant has been denied due process. *Lane*, 316 S.W.3d at 562 (citing *Boykin*, 395 U.S. at 243 n.5). To make such a determination, the court must examine "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Id*. Courts should consider the following factors when ascertaining the validity of a guilty plea: (1) the defendant's relative intelligence; (2) the defendant's familiarity with criminal proceedings; (3) the competency of counsel and the defendant's opportunity to confer with counsel about alternatives; (4) the advice of counsel and the court about the charges and the penalty to be imposed; and (5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial. *Id*.

(citing *Howell v. State*, 185 S.W.3d 319, 330-31 (Tenn. 2006)). "[A] plea is not voluntary if it results from '[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats.'" *Id.* at 563 (quoting *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993)). Thus, the transcript of the plea colloquy must affirmatively show that a defendant's decision to plead guilty was both voluntary and knowledgeable. *Id.* The trial court must ensure that the defendant entered a knowing and intelligent plea by thoroughly "'canvass[ing] the matter with the accused to make sure that he has a full understanding of what the plea connotes and of its consequences.'" *Id.* (quoting *Blankenship*, 858 S.W.2d at 904).

To ensure that defendants' guilty pleas are voluntarily, knowingly, and intelligently entered, Rule 11 of the Tennessee Rules of Criminal Procedure sets forth, in pertinent part, the requirements for guilty pleas:

> Before accepting a guilty or nolo contendere plea, the court shall address the defendant personally in open court and inform the defendant of, and determine that he or she understands, the following:
>
> (A)    The nature of the charge to which the plea is offered;
>
> (B)    the maximum possible penalty and any mandatory minimum penalty;
>
> (C)    if the defendant is not represented by an attorney, the right to be represented by counsel--and if necessary have the court appoint counsel--at trial and every other stage of the proceeding;
>
> (D)    the right to plead not guilty or, having already so pleaded, to persist in that plea;
>
> (E)    the right to a jury trial;
>
> (F)    the right to confront and cross-examine adverse witnesses;
>
> (G)    the right to be protected from compelled self incrimination;
>
> (H)    if the defendant pleads guilty or nolo contendere, the defendant waives the right to a trial and there will not be a further trial of any kind except as to sentence;

(I)     if the defendant pleads guilty or nolo contendere, the court may ask the defendant questions about the offense to which he or she has pleaded. If the defendant answers these questions under oath, on the record, and in the presence of counsel, the answers may later be used against the defendant in a prosecution for perjury or aggravated perjury; and

(J)     if the defendant pleads guilty or nolo contendere, it may have an effect upon the defendant's immigration or naturalization status, and, if the defendant is represented by counsel, the court shall determine that the defendant has been advised by counsel of the immigration consequences of a plea.

Tenn. R. Crim. P. 11(b)(1).

Rule 11 also requires that the trial court ascertain that the plea is "voluntary and is not the result of force, threats, or promises," other than those contained in the plea agreement. Tenn. R. Crim. P. 11(b)(2). In addition, Rule 11 requires the trial court to inquire "whether the defendant's willingness to plead guilty results from prior discussions between the district attorney general and the defendant or the defendant's attorney." *Id.* Finally, the trial court must confirm that there is a factual basis for the plea. Tenn. R. Crim. P. 11(b)(3). Tennessee case law has further refined the requirements of a plea colloquy to include informing a defendant and ensuring that he understands that different or additional punishment may result from his guilty plea due to prior convictions or other factors and that the resulting conviction may be used for enhancement purposes in any subsequent criminal actions. *Lane*, 315 S.W.3d at 564 (citing *Howell*, 185 S.W.3d at 331).

Our review of the guilty plea transcript confirms that the trial court reviewed each of petitioner's rights with him, and petitioner answered each question affirmatively by stating either "Yes, sir," or "I understand, Your Honor." The exchange continued:

The Court:     When you enter a guilty plea, you're telling me that you know there is no appeal from a guilty plea, and second of all, you're telling me that you agree that you have these trial rights, but you don't want to exercise them. You want me to find you guilty based on this agreement that's been worked out for you.

Petitioner:     I understand that, Your Honor.

The Court: Okay, and my question to you, then, is that what you want to do? Is that what you think is in your best interest?

Petitioner: That's not in my best – Your Honor, that's – that's what I agree to do, Your Honor.

The Court: See, I have to make a finding that you're doing this freely and voluntarily. Now, if you're not, then I can't accept this because I don't want to pressure you one way or the other, but the only way I can accept this – because then you have waived your trial rights and you've waived your appeal rights. The only way I can accept that is to know that you understand that you have all these options, and this is what you're choosing to do.

Petitioner: Your Honor, that's what I'm choosing to do based on the fact that a bond – I understand that the bond hearing would be November 1st, and I was already released on recognizance, and this – both situations, both charges, stem from the same event, from the same – and the same person. I wasn't prepared – I mean, I was coming down expecting to have a trial date set today, not to go back to jail, Your Honor.

The Court: I understand. I guess the question I have is do you want to enter this plea? You're going to have these misdemeanors on your record, and you're going to have to deal with that. I mean, do you want me to enter this plea today?

Petitioner: Yes, Your Honor.

The Court: And I appreciate – I mean, I'm not unaware of the pressures that you face, but, again, we all are in these situations, and that's why I have to ask you these. If this is what you want me to do, this is what I'm going to do, and we're going to deal

> with it right now. If it's not what you want me to
> do, then I won't.

Petitioner:    That's what I – that's what I choose to do, Your Honor.

After a full hearing, the post-conviction court found that petitioner's guilty plea was knowingly, voluntarily, and intelligently entered. The transcript of the plea colloquy confirms that the trial court followed the mandates of Rule 11 of the Tennessee Rules of Criminal Procedure and applicable state and federal law. When the trial court had concerns stemming from petitioner's responses at the hearing, it thoroughly questioned petitioner to ensure that he was entering the plea intelligently, knowingly, and voluntarily.

At the guilty plea hearing, petitioner testified that he agreed to enter the guilty plea and that was what he wanted to do. At the post-conviction evidentiary hearing, he testified that his guilty plea was not voluntary. "A petitioner's testimony at a guilty plea hearing 'constitute[s] a formidable barrier' in any subsequent collateral proceeding because '[s]olemn declarations in open court carry a strong presumption of verity.'" *Bruce S. Rishton v. State*, No. E2010-02050-CCA-R3-PC, 2012 WL 1825704, at *17 (Tenn. Crim. App. May 21, 2012) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)), *perm. app. denied* (Tenn. Aug. 15, 2012). In this case, the post-conviction court credited petitioner's testimony during the guilty plea hearing. In sum, "[i]t appears the petitioner is suffering from a classic case of 'Buyer's Remorse,' in that he is no longer satisfied with the plea for which he bargained. A plea, once knowingly and voluntarily entered, is not subject to obliteration under such circumstances." *Robert L. Freeman v. State*, No. M2000-00904-CCA-R3-PC, 2002 WL 970439, at *2 (Tenn. Crim. App. May 10, 2002).

Petitioner has failed to prove his allegation by clear and convincing evidence. From the record before us, we do not conclude that trial counsel's performance fell below the objective standard of reasonableness expected of attorneys. Petitioner is not entitled to relief.

## CONCLUSION

After a thorough review of the record and the briefs of the parties, we discern no error and affirm the judgment of the post-conviction court.

_____
ROGER A. PAGE, JUDGE